THOMAS STOVER

*v.*

JAMES MITCHELL.

1. COMPROMISE. A voluntary compromise or settlement of doubtful and conflicting claims will not be set aside or disturbed in the courts, merely because the parties may have acted under a mistake as to the law.

2. Duress. In order to make a payment compulsory, such a pressure must be brought to bear upon the person paying as to interfere, in some way, with the free enjoyment of his rights of person or property.

Appeal from the Circuit Court of Stephenson county; the Hon. Benjamin R. Sheldon, Judge, presiding.

This was an action of assumpsit, brought by Thomas Stover against James Mitchell, in the Circuit Court of Stephenson county. The case was tried by a jury, and a verdict found for the defendant. A motion for a new trial being overruled, a judgment was rendered upon the verdict.

The case was brought to this court by appeal.

The facts are sufficiently stated in the opinion.

Messrs. Meacham & Cochran, for the appellant.

Messrs. Turner & Neff, for the appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

The firm of James Mitchell & Co., bankers, loaned $500 to one Clark, and took from him, as collateral security, a note for a like amount against J. Bright Smith and John Miller. In September, 1860, they recovered judgment on this note in the name of Clark, against Smith and Miller. They held the judgment, as they had held the note, as security for Clark's debt. At the same term of the court, Henry Miller and Sebastian Miller recovered judgment against Smith and John Miller, for $395.90. Executions were issued on both judgments within the year, and returned unsatisfied. In 1863 alias executions were sued out on both judgments, and levied on forty acres of land belonging to Stover, the plaintiff below, and appellant in this court. Stover had bought the land of John Miller, the defendant in the executions, in 1846, Miller being then the owner. Stover, however, had not recorded his deed until March, 1862, more than eighteen months after the rendition of the judgments against Smith and Miller. The land was a timber tract, situate several miles from the residence of Stover,

and during his ownership he had been in the constant habit of procuring from it his fire-wood, fencing, and building material. Stover was notified of the levy of the executions, and requested to come to Freeport and settle the matter. He accordingly saw the attorney for the plaintiffs in the executions and Mitchell himself, and, after some negotiation, conveyed to Mitchell a house and lot in Freeport, in satisfaction of the judgments, and they were thereupon satisfied of record. After holding this property about two years, Mitchell sold it for $1,075, and applied the proceeds *pro rata* between the two judgments, giving Clark credit on his debt due the firm of Mitchell & Co. for his share, and paying the residue to the owners of the other judgment. After all this was done, Stover brought this suit against Michell to recover the money for which the house and lot were sold. The verdict and judgment were for the defendant, and the plaintiff appealed.

This suit is based upon the theory that Stover was exercising such acts of ownership over the timber land as to affect creditors of Miller with notice; that the judgments were, therefore, not liens upon the land, notwithstanding the deed to Stover had never been recorded; that Mitchell and his attorney, in claiming that the judgments were liens, had deceived Stover and obtained an unfair advantage over him, and that, in equity and good conscience, Mitchell should, therefore, be required to refund the proceeds of the house and lot conveyed to him by Stover.

It has long been a settled principle that a voluntary compromise or settlement of doubtful and conflicting claims will not be set aside or disturbed in the courts, merely because the parties may have acted under a mistake as to the law. The rule is so familiar as hardly to need the citation of authorities. Many of the cases are cited in the notes in 1 Story's Equity Jurisprudence, section 111, *et seq.* This rule has been frequently applied in this court. *Broadwell* v. *Broadwell,* 1 Gilm. 604; *Shafer* v. *Davis,* 13 Ill. 397; *Campbell* v. *Carter,* 14 id. 291; *Sibert* v. *McAvoy,* 15 id. 109. It rests on the sound basis that there can be no certainty or security in affairs unless

every person is supposed to know the law, and that to over-haul a settlement of doubtful and conflicting claims, voluntarily made, with full knowledge of the facts, on the sole ground of a misapprehension of the law, would open the door to endless litigation.

In the case before us, there is no ground whatever for disturbing the settlement made between these parties. Neither Mitchell nor his attorney made any misrepresentation to Stover of any matter of fact. They both expressed the opinion that the judgments were a lien upon the land. They may have honestly thought so, as they may not have known to what extent Stover had exercised acts of ownership over it, and it is by no means easy, in a case of this character, to define the precise limits of constructive notice. The question of lien would depend upon what facts Stover might be able to prove upon a trial. But admitting his acts of ownership amounted to constructive notice, and that Mitchell, and Bright, his attorney, were aware of all the circumstances, Stover was equally aware of them, and, as a *matter* of fact, must have known, better than they could possibly know, what had been his acts of ownership, and to what extent he could prove them. Even if Mitchell's attorney, in expressing an opinion that the judgments were a lien, had said this with a full knowledge of the facts, it was not an opinion upon which Stover had any right to rely. If he had consulted Bright without knowing his relationship to Mitchell, and Bright had concealed that fact, and had advised him to his detriment, it would have been an abuse of a confidential relation, against which the courts would relieve. But there was nothing of that kind. Stover knew that Bright was acting for Mitchell, and, knowing this, he had no right to ask his opinion; and to be governed by it, whether asked for or not, was an act of folly for which the courts can no more furnish a remedy, than they can rescind a contract for the purchase of a piece of land, at the suit of the buyer, on the ground that, with every opportunity of exercising his own judgment, he had given twice or thrice its worth, because the vendor had expressed the opinion that such was its value.

But it is urged by the counsel for appellant, that the conveyance of the house and lot was not voluntary, but made under duress. It is insisted that the levy of the execution on Stover's land was the exercise of such compulsion as to interfere with Stover's freedom of action. No case is cited going to this extent, and we venture to say none can be found. In order to render a payment compulsory, such a pressure must be brought to bear upon the person paying as to interfere, in some way, with the free enjoyment of his rights of person or of property. *Bradford* v. *The City of Chicago*, 25 Ill. 420, and *Elston* v. *City of Chicago*, 40 id. 514. In these cases, the authorities on this question were reviewed at some length. It has been sometimes held that a seizure of goods amounts to duress, because the owner may have such a pressing necessity for their immediate use, that his legal remedies would not sufficiently protect him, though this has been held not to apply where replevin could be brought. *Preston* v. *City of Boston*, 12 Pick. 7; *Knibbs* v. *Hall*, 1 Espin. 84. But we can discover no duress or compulsion where an execution against A. is levied on the land of B. The latter is not disturbed in his person, or the possession or enjoyment of his property. If confident of his title he need give himself no trouble. If the superiority of his title to the lien of the judgment is questionable, or depends on matters *in pais*, resting in parol proof, and he fears a sale may create a cloud upon his title, he can stay the sale by injunction. If, instead of this, he prefers to buy his peace, he cannot subsequently say he acted under compulsion, and call on the courts to give him back his money. In this case the sale was not advertised, as we may rightly infer from the record, and Stover was under no necessity of hasty action, but would have had several weeks in which to sue out an injunction.

Numerous objections are taken to the instructions. It is unnecessary to consider them in detail, as the principles embodied in them are in substantial accord with the views here expressed, and the verdict is so clearly right, that it would have been the duty of the court to set a different one aside.

The objection to the juror is disposed of by the amended record. The judgment is affirmed.

*Judgment affirmed.*