**Edward S. Keeley, Appellant, v. Elizabeth E. Pope, Appellee.**

### Gen. No. 5440.

DURESS—*when not established.* *Held*, under the evidence in this case, that the payment in question was voluntary and not made under duress.

Assumpsit. Appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 16, 1911.

CHARLES T. FARSON and STERN, ANDERSON & DAVIS, for appellant.

CASTLE, WILLIAMS, LONG & CASTLE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action in assumpsit, brought by Alexander F. McKeown against Elizabeth E. Pope. Subsequently Edward S. Keeley was substituted as plaintiff. The declaration contains the common counts, to which the plea of the general issue was filed. The case was tried by the court without a jury, and a judgment was rendered in favor of the defendant, from which the plaintiff prosecutes this appeal.

Appellee owned an irregular shaped tract of land near Libertyville, in Lake county, which had been bought in parcels at different times, and on which a lake was situated. Appellant, who is vice-president of the Chicago, Milwaukee & St. Paul Railroad, desired to buy a farm. The land owned by appellee at one time consisted of about 255 acres, but she had sold to one Slusser a piece consisting of about thirteen acres, which was separated from the remainder of the farm by a highway. Appellant spoke to one Yager, who was a conductor on the railroad on which appellant was an official, and who traded some in real estate, in regard to purchasing a farm, and Yager, who was acquainted with the husband of appellee, spoke to him

about the farm, asking if it was for sale, but did not tell him who the prospective purchaser was. Pope said it was. Yager reported to one Wlliams, appellant's secretary, that the farm was for sale at $100 an acre for 255 acres. Appellant then put the matter in charge of A. F. McKeown, a real estate broker in Chicago, and McKeown entered into negotiations for the purchase of the farm as though he was the purchaser. McKeown employed Smith and Wilmot of Waukegan to negotiate for the farm. Smith and Wilmot went and saw appellee and secured the agency to sell the farm, apparently without disclosing that they were acting in the interest of a purchaser. A written contract was secured by which McKeown "agrees to purchase at the price of $22,950 the following described real estate situated in the county of Lake and State of Illinois, to-wit: 255 acres more or less, being parts of sections * * * as described in continuation of abstract of title No. 1770 * * * and being shown shaded in red on plat." The contract is dated January 7, 1907, and recites the payment of $250 earnest money and that the purchaser should pay $6,700 within ten days after the title had been accepted, execute a note for $4,000 and mortgage to the vendor securing the same, and to assume the payment of a $12,000 note secured by a trust deed on the premises. On February 9, 1907, a warranty deed was made and deposited in escrow and $1,250 paid and endorsed on the contract, with an extension of thirty days for the payment of $1,000 and sixty days to pay the balance. Payments of $500 per month from that time to October 4, 1907, are endorsed on the contract. On December 3, 1907, appellant had a survey of the land made which disclosed that the tract contained 241.20 acres; appellant then had another surveyor measure the land and he reported the farm to consist of 241.61 acres. The surveyors did not follow the enclosing fences, which had been there for many

years. The $12,000 trust deed matured September 7, 1909. On June 30, 1909, appellant filed a bill against appellee for specific performance, returnable to the October term of the Lake County Circuit Court, which was subsequently dismissed. The foregoing facts are conceded. In August, 1909, appellant tendered $823 and demanded the delivery of the deed, claiming that he had bought 255 acres at $90 an acre and that there was a shortage of 13.39 acres. Appellee refused to accept the tender insisting that the land had not been sold by the acre but for a lump sum. Appellant on August 19, 1909, paid the sum of $2,211.12 under protest, and now insists that $1,387.26 of that sum was paid under duress because the $12,000 trust deed would mature soon after September first and he feared a foreclosure.

One of the issues is, was the land sold by the acre at $90 per acre or for a lump sum? Yager never talked with appellee, but only with her husband, and testifies that Pope gave him the price as $100 per acre for 255 acres, and that Pope had listed it with him and he expected a commission on a sale. Appellant had no talk with either appellee or her husband regarding the sale. McKeown testifies that he procured Smith and Wilmot to act for him in buying the land; that at his request they went to appellee and got the agency and appellee paid them a commission; that he dickered with Pope, offering $80 and $85 an acre, and that Pope asked $95; that the deal was closed at $90 and that 255 acres was mentioned as the amount of land; that he does not remember ever talking with Pope on any basis except by the acre; that on one occasion when Keeley, Smith, Pope and he were present, Pope did not mention the price or number of acres, but only showed where the boundary lines of the farm were; that he obtained a commission from Pope out of this sale, by a Mr. Reed, who drew the deed for Pope, getting $250 commission from Pope, and dividing it

with him.  A Mr. Eaton, who says he was present when Pope, Keeley and McKeown were viewing the farm, testifies he asked McKeown what Pope was asking, that McKeown replied $100 an acre, and he, Eaton, said it was worth $125, and that Pope was present at the time.  Neither Smith nor Wilmot, who apparently were acting as agents for appellee, but really without the knowledge of appellee were acting for appellant, was called as a witness.

Pope testifies that he never talked with Yager about the sale of the farm to McKeown, but that he may have talked with him about the farm on the train; that he did not tell him there were 255 acres in the farm; that Smith and Wilmot got authority from his wife to sell the farm, and it was priced to them at $25,000, and that he never talked to any of the parties about selling the farm by the acre, and that Smith and Wilmot once reported an offer of $20,000; that when his wife bought it, they understood it contained from 255 to 260 acres, but they had sold a piece of from ten to thirteen acres across the road to Slusser; that Smith and Wilmot finally reported the offer of $22,950 and that he, Pope, never talked with McKeown about the farm until after the contract was closed by Smith and Wilmot.

The evidence was conflicting as to whether the sale was made by the acre or for a lump sum.  The contract itself was for a lump sum, and the description of the land is by metes and bounds, with a designation of the number of acres "more or less."  The burden was upon appellant to show the sale was by the acre. The trial court saw the witnesses and could judge of their credibility better than a court that has not had the same opportunities to judge of their truthfulness. The court apparently found that the land was sold for a lump sum, and we cannot say the finding is incorrect.

Appellant's claim to recover is founded on the

theory that the payment on his part was involuntary and made under duress; that the duress consisted in the right of the holder of the trust deed securing the $12,000 note to begin proceedings to foreclose it at the maturity of the note. The trust deed and note were known by McKeown to be in a bank in Libertyville, where payments had been made on it by the agent of appellant, and the appellant had not been able to ascertain that he could not obtain an extension of the trust deed. It is neither shown that he was unable to pay it nor that he did not have ample means to obtain money to pay it. He had known of the shortage for over a year and a half, and that appellee denied that the sale was by the acre. The contract of sale did not contain a forfeiture clause, and there was no pressing necessity for making the payment when it was made, but he might have paid the amount he admitted to be due and litigated the remainder. The evidence all tends to show a voluntary payment and that it was not made under duress. Stover v. Mitchell, 45 Ill. 213; Swanston v. Ijams, 63 Ill. 165; Hart v. Strong, 183 Ill. 349.

It is assigned for error that the court improperly refused to hold several propositions of law and facts as ascertained by appellant. Each proposition refused is a mixed proposition of law and fact. In addition to the propositions of law contained in them, to have held them as requested the court would necessarily have found either that the sale was by the acre or that the payment was made under duress; neither of which propositions was proved to such an extent that we can say the court erred in the rulings made. Finding no error the judgment is affirmed.

*Affirmed.*