## Sadie Sando, Defendant in Error, v. William R. Smith, Plaintiff in Error.

### Gen. No. 29,531.

1. APPEAL AND ERROR—*when verdict finding the making of a gift is not reversible as against the manifest weight of evidence.* Where the sole evidence of a gift by a decedent was that of the sister of the donor who was present when the alleged gift was made, and where it was claimed that the record was full of impeaching circumstances, all of which were inconsistent with the claim that any gift was made as testified to, but where all were denied by the donee and her witnesses, and where there were also inconsistent circumstances, the finding of the jury is not against the manifest weight of the evidence.

2. ARGUMENTS OF COUNSEL—*when right of argument is improperly limited.* In an action by one claiming as donee of a decedent against the donor's administrator to recover the funds in question which plaintiff had delivered to the defendant on his request, where the pleadings squarely presented the question whether the delivery of the pass books and check in question, to the defendant by the plaintiff, had been caused by a misrepresentation on the part of defendant to the effect that he had procured the entry of an order by the probate court directing that such things be done, or whether the defendant had made no false representations, but plaintiff, with full knowledge of the facts, had made voluntary delivery without claiming title, and each party submitted evidence in support of his position, it was error for the court to refuse to permit counsel for defendant to argue to the jury as to the material question of fact whether or not defendant had made the alleged false representations, even though the question of voluntary payment was not involved in the case as a question of law.

3. PAYMENT—*recovery of voluntary payment to administrator as officer of court.* The rule that money paid with full knowledge of all the facts and under a misapprehension as to legal rights may

not be recovered back held not applicable to payments made to an officer of the court, such as a receiver, a trustee in bankruptcy or an administrator or executor.

4. ESTATES OF DECEDENTS—*applicability of rule against recovery of voluntary payments to payments to administrator.* A defendant, who, although the administrator of the estate of the decedent in question, was defending in his personal capacity, in an action to recover money claimed as a gift, which had been turned over to him by the donee and who took the position that the money sued for belonged to the estate of his intestate, and that he was rightfully in possession of the money as an officer of the court, could not defeat recovery on the theory of voluntary payment, or the contention that plaintiff turned over the money to him with full knowledge of the facts involved and under a mistake of law as to her rights, as those rules are not applicable to payments made to an administrator; and as he claimed rights as administrator, he was chargeable with the obligations placed by the law upon one occupying that position.

5. ESTATES OF DECEDENTS—*liability of administrator to heirs for nonassets received after appointment.* An administrator is not responsible to the heirs of a deceased person, nor required to account to the court, for money or property which may have come to his possession after his appointment, unless such money belonged to the decedent's estate at the time of his death.

6. INSTRUCTIONS—*refusal of instructions containing abstract propositions of law as error.* The refusal of instructions containing abstract propositions of law could not be said to be error.

7. GIFTS—*admissibility of declarations of decedent as to intention to make gift.* In an action to recover money claimed as a gift from a decedent, which had been turned over by the donee to the defendant, who had been appointed administrator, testimony as to declarations of the deceased tending to show an intention to give the property in question to plaintiff was properly admitted, where there was direct testimony to the effect that the property was turned over by deceased to plaintiff, and there were circumstances in the case more or less inconsistent with the fact that such delivery was a gift.

8. GIFTS—*admissibility of evidence of donative intent.* In an action by one claiming as donee of money from her sister in the latter's last illness, against the administrator of the sister's estate individually, to whom plaintiff had delivered the funds on his request after the death, evidence concerning the plaintiff's attentions to decedent during her last illness is admissible on the question of intention to give where there is direct evidence that decedent turned over the fund to plaintiff but there are circumstances inconsistent with the claim that such delivery was donative.

9. TRIAL—*construction of special interrogatory.* In an action to recover money claimed as a gift from a decedent, which had been turned over to the defendant individually, who had been appointed administrator, a special interrogatory in substance as follows: Did decedent prior to her death, deliver to plaintiff her two bank books which have been introduced in evidence, and the money represented thereby, with intent to part with interest in and dominion and control over them and to vest in plaintiff the title to said books and the money which they represented, was not subject to the construction that it assumed that there was a delivery of the property, and merely inquired as to the intent which the jury believed the deceased had in so delivering it, and the submission thereof was not error.

10. WITNESSES—*when donee competent as to declarations by deceased donor.* In an action by the donee to recover money claimed as a gift from a decedent, which had been turned over to defendant, the donee was competent to testify as to the occurrences which were alleged to have happened prior to the death of the deceased, as the defendant was properly sued, not as administrator, but in his individual capacity.

11. WITNESSES—*application of rule of incompetency by death of party to transaction.* In an action to recover money claimed as a gift from a decedent, which had been turned over to the defendant, who had been appointed administrator, plaintiff could recover only on the theory that the money she was suing for was not a part of the estate of the deceased, and, such being the case, the defendant, who was wrongfully retaining it, was liable as an individual; therefore the rules of evidence eliminating the testimony of the plaintiff in a suit against the administrator were not properly applicable.

12. GIFTS—*admissibility of writing corroborating claim of gift.* In an action to recover the value of gifts made by a decedent, where plaintiff claimed that certain bank books and a watch were contained in a bag handed to plaintiff by the decedent, where there was testimony that plaintiff turned the watch over to a third party to whom it belonged, after the decedent's death, it was error to refuse to admit in evidence a receipt for such article given by said third party to plaintiff, dated prior to said death, as such receipt tended to support plaintiff's testimony that she delivered it before decedent's death and indirectly supported her theory of the gift.

Error by defendant to the Circuit Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed June 17, 1925.

RANKIN & LUSTFIELD, for plaintiff in error; ODE L. RANKIN, of counsel.

PERLEY H. BISHOP and FREDERICK W. MOORE, for defendant in error.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this writ of error the defendant Smith seeks to reverse a judgment for $5,742.39, recovered against him by the plaintiff in the circuit court of Cook county.

Margaret E. White died in June, 1921, leaving surviving as her only heirs and next of kin three sisters and a brother,—Mrs. Sando, the plaintiff; Mrs. John W. White, Mrs. Griffiths, and William R. Smith, the defendant. For some weeks prior to her death, Mrs. Margaret White had been confined to her bed by a serious illness. She was a woman advanced in years and lived in a small cottage, which was her property, with another elderly woman as her companion. During this last illness, Mrs. Sando, the plaintiff, who lived not far from the home of Mrs. Margaret White, went there daily and ministered to the comfort of her sister. Mrs. Griffiths, whose home was in California, was in Chicago at the time staying at the home of Mrs. Sando, and she frequently visited the home of Mrs. Margaret White.

The evidence shows that the deceased had savings deposits in two separate banks and that about a week prior to her death, there being need of some money to pay the current expenses of the household, it was suggested to her, apparently by her three sisters, all of whom were present, that she execute an order on one of the banks for $500, for the purpose of providing the funds necessary to meet her immediate needs. The money thus made available was procured by Mrs. Sando, and up to the time Mrs. White died $205 had

been expended in her behalf and $295 remained in Mrs. Sando's possession.

After Mrs. White's death, Mrs. Sando also had in her possession the two savings bank books, covering the two accounts which had been owned by Mrs. White. The defendant, William R. Smith, was appointed administrator of the estate of Mrs. White and shortly thereafter he, with one Brust, a lawyer, called on Mrs. Sando, and at that time she turned over the bank books in question to the defendant, and he subsequently secured possession of the funds in the two savings accounts and has since had them in his possession as administrator of the estate.

Shortly after Mrs. Sando turned the bank books over to the defendant, she was called upon by one Wagner, another lawyer, representing the administrator and at that time she gave Wagner a check for $295, being the balance of the $500 she had received on Mrs. White's order prior to her death, which check was likewise delivered to the defendant, as administrator.

Subsequently the plaintiff brought this action in assumpsit against the defendant, individually, to recover back the proceeds of the two savings accounts and also the $295, claiming that these funds had been the subject of a gift to her from her sister shortly before her death.

This case has been tried twice and on each trial the jury found the issues in favor of the plaintiff. On the first trial the plaintiff was allowed to testify to facts alleged to have occurred prior to the death of her sister, over defendant's objection, and, on the theory that the admission of that evidence was error, a new trial was awarded; and, on the second trial, the plaintiff was not permitted to testify as to things alleged to have taken place prior to the death of the deceased.

The only direct evidence supporting the gift of the bank books in question, and the moneys they represented, to the plaintiff by the deceased was given by her sister, Mrs. Griffiths, who testified that on an occa-

sion when only she and the plaintiff were present with the deceased, a short time prior to her death, the latter turned over a chamois bag to the plaintiff and made a gift of its contents to her, saying: "Sadie, I want you to have this. Take it. You are entitled to it. Everything in it is for you." In addition to the bank books in question, the testimony shows that the chamois bag contained a gold watch, which had belonged to the husband of the deceased, and three diamonds,—one set in a ring and the other two in a pair of earrings.

While there could be no direct denial of this testimony supporting the theory of a gift, it being the testimony of Mrs. Griffiths that this occurrence happened when only she and the plaintiff were present with the deceased, it is the defendant's contention that the record is full of impeaching circumstances, all of which are inconsistent with the fact that any gift had ever been made, as testified to by Mrs. Griffiths. Many of these alleged impeaching circumstances rest upon testimony of witnesses for the defendant, and they are the subject of denial on the part of the plaintiff and her witnesses. Presumably, the jury in weighing the evidence as to these circumstances concluded that they had not occurred as claimed by the defendant, and the state of the record is such that this court could not say that the finding of the jury in that regard was against the manifest weight of the evidence. But there are certain admitted facts which the defendant contends are wholly inconsistent with the thought of a gift of this money by the deceased to her sister, the plaintiff.

The first is, that after the plaintiff claims the deceased gave her these bank books, she, together with Mrs. Griffiths and Mrs. John W. White, got the deceased to execute some sort of an order on the bank for the purpose of enabling her to get the $500, to be used in meeting her immediate needs. This, it is claimed, was entirely out of line with any theory that

the deceased had already made a present of all the money in these accounts to the plaintiff. It is pointed out, on the other hand, that the evidence tends to show that there was not as cordial a feeling between the deceased and her sister, Mrs. John W. White, and her brother, the defendant, as there was between the deceased and her sister, Mrs. Griffiths, and the plaintiff. Mrs. Griffiths testified that when the deceased first gave the chamois bag to the plaintiff, and told her she wanted her to have everything there was in it, the plaintiff refused to take it, and slipped the bag under her sister's pillow and told her she might yet need what was in it; and that a few days later, when she and the plaintiff were alone in the room with the deceased, and the other sister, Mrs. John W. White, was in an adjoining room, the deceased again placed the chamois bag in the hands of the plaintiff and told her to take it home and keep it, and when she did so "she shook her finger to enjoin silence. Our other sister was in the other room." The jury might consider that this explained any apparently inconsistent action of the plaintiff when she a day or two later joined with the others in suggesting to the deceased that she execute an order on the bank for the purpose already indicated, and that, those being the circumstances, the plaintiff might have desired to conceal the fact that her sister had given these bank accounts to her.

Another circumstance relied upon by the defendant in this connection is that when he and his lawyer called on the plaintiff, after their sister's death, the plaintiff, with apparent willingness, turned these bank books over to him without saying anything to the effect that she claimed they, or the accounts they represented, were hers; but as to these circumstances, her contention is that on that occasion she asked her brother if he had an order of the probate court directing her to turn these bank books over to him and that he said he had and that he exhibited such an order to her, or a document she concluded was an order, and

that her act in turning over these books to her brother was prompted by the fact that such an order had been entered. This incident furnishes another one of the many controverted questions of fact in the case. The defendant's contention is that on this occasion nothing was said about a court order but that he told his sister that he had been appointed administrator and that the document he showed her was a certified copy of his letters of administration, and that when he showed her this document and told her he had been appointed and asked her to turn the books over to him, as administrator, she willingly did so.

The third inconsistent circumstance urged in this connection by the defendant is that some time later, when the other lawyer, Wagner, called upon the plaintiff and asked her about the balance of the $500 in her hands, she, according to her own testimony, told him that she had kept a careful account of the items involved in her expenditures from that fund and she exhibited a list of those items to him, and asked him to figure them up and ascertain the difference between their total and the $500, and draw a check for the difference which she would be glad to sign, "according to law, because I want everything right." This circumstance may not be explained on the theory that the plaintiff was misled by thinking she was required to do what she was doing because the court had entered an order directing that it be done, for she testifies that in this same conversation between herself and the lawyer representing the defendant, the lawyer said he understood the deceased had some diamonds, and that she then told the lawyer that her sister had given her the diamonds to keep, and the lawyer then asked her how she happened to have given up the bank books, and she then told him that she was "tricked out of them" by her brother. There does not seem to have been any fact involved of which the plaintiff was not cognizant at the time she gave the defendant's lawyer the $295 check.

If the only question presented on this appeal was the question of fact as to whether or not the deceased had made a gift of this money to the plaintiff, as she claims, we would not be disposed to disturb the judgment. The facts involved here are somewhat different from those involved in *Barnum v. Reed,* 136 Ill. 388, and in *Rothwell v. Taylor,* 303 Ill. 226, for in the case at bar there was positive direct evidence tending to support the gift and in our opinion it may not reasonably be said, because of the testimony as to the alleged inconsistent circumstances, that the verdict of the jury, finding that there was a gift, is against the manifest weight of the evidence. We are of the opinion, however, that such error entered into the trial of this case as necessitates a reversal of the judgment and a remanding of the cause for another trial.

The plaintiff's declaration consisted of a number of common counts and also a special count, and in the latter the plaintiff alleged, among other things, that the defendant, "falsely pretending and representing to the plaintiff" that he was entitled to possession of the bank books and "that he had an order of some court directing plaintiff to deliver" those bank books to him, demanded that she so deliver them, and the plaintiff, believing and relying upon the defendant's statement, complied with his demand and turned the books over to him. By special pleas which he filed the defendant alleged that as administrator of the estate of the deceased he requested the plaintiff to turn the bank books over to him, together with the balance of the $500 fund, and that "the plaintiff did voluntarily surrender said bank books to the defendant as such administrator and issued to the defendant a check for the sum of $295." The plaintiff's demurrers to these special pleas having been overruled, she filed replications in which she alleged that she "did not voluntarily surrender the said bank books to the defendant as such administrator and did not voluntarily issue to him the said check for $295," but that she surrendered

the bank books and issued the $295 check to the defendant "because the said defendant falsely and fraudulently represented and stated to the said plaintiff that he had an order from the Probate Court of Cook County directing the plaintiff to surrender said pass books and to issue said check to him, and that the plaintiff, believing said statements and representations made by said defendant, and * * * relying thereon, * * * delivered the said pass books and the said check to the said defendant."

The pleadings of the parties thus presented squarely the question of whether the delivery of the pass books and the check to the defendant by the plaintiff had been caused by a misrepresentation on the part of the defendant to the effect that he had procured the entry of an order by the court directing that these things be done, or whether, on the other hand, he had made no false representation, but the plaintiff, with full knowledge of the facts, had voluntarily delivered the balance of the $500 and the bank books to the defendant without claiming any title to them herself. Each of the parties submitted evidence in support of their respective positions on that question. At the close of the trial counsel for the respective parties went into chambers with the trial judge to settle the instructions; and in connection with his action in marking certain of the instructions for the defendant "refused" some discussion was had as to the scope of the issues of fact which the jury were to be called upon to decide and on which counsel might properly base their argument; and in that connection counsel for the defendant made it known that he wished to argue the question of a voluntary payment by the plaintiff to the defendant and also the question of the alleged fraud by the defendant in falsely representing that he had a court order, and the court stated, in substance, that in his opinion these matters were not involved and that he would not permit counsel for the defendant to cover these matters in his argument

to the jury. In connection with this matter it is contended by counsel for the plaintiff that the action of the trial court was merely such as to prevent counsel for the defendant from arguing a question of law to the jury. The statements of counsel and of the court, which have to do with this matter, appear rather fully in the record and we have examined them carefully, and in our opinion the action of the trial court went too far and improperly limited the argument of counsel for the defendant before the jury as to a material question of fact, namely, whether the defendant had made the alleged false representation or not.

So far as the question of a voluntary payment is concerned, we are of the opinion that the trial court was properly of the opinion that it was not involved as a matter of law. It is true that, as a general rule, money voluntarily paid to another under a claim of right to the payment and with knowledge of the facts, by the person making the payment, cannot be recovered back on the ground that the claim was illegal. In turning these bank books over to the defendant, the plaintiff was in effect transferring to him or paying to him the money which they represented. The general rule is further to the effect that a payment made with a full knowledge of the facts and circumstances and in ignorance only of legal rights cannot be recovered back and proof that the one making the payment was in fact under no legal obligation to pay and that the other had no right to receive the payment is of no consequence and will not entitle the one making the payment to sue for a recovery of the money, unless the payment was compulsory to the extent of depriving him of the exercise of his free will. *Illinois Glass Co. v. Chicago Tel. Co.*, 234 Ill. 535. But, in our opinion, this rule that money paid with a full knowledge of all the facts and under a misapprehension as to legal rights may not be recovered back is not applicable to the payments made to an officer of the court, such as a receiver or a trustee in bankruptcy or

the administrator or executor of an estate. This exception to the general rule was applied to a trustee in bankruptcy by Lord Justice James in *Ex parte James,* 9 Ch. App. 609, where the court pointed out that the trustee was to hold money paid into his hands upon trust for its equitable distribution among the creditors. In this case a creditor had received money to which he was properly entitled under an execution sale against the bankrupt, but he paid this money over to the trustee, under the mistaken belief that the latter was entitled thereto as a matter of law. In deciding that the creditor could recover the money back from the trustee, the Lord Justice said: "The court, then, finding he (the trustee) has in his hands money which in equity belongs to someone else, ought to set an example to the world by paying it to the person really entitled to it. In my opinion the court of bankruptcy ought to be as honest as other people." The foregoing decision was followed in *Ex parte Simmonds,* 16 Q. B. Div. 308, where Lord Esher said that, although the court will in general permit an individual litigant to do a "shabby thing,"—namely, to retain money thus acquired,—it will not allow its own officer to do so. In that decision Lord Esher continued: "It will direct its officer to do that which any right-minded man would do, viz., not to take advantage of the mistake of law. This rule is not confined to the court of bankruptcy. If money had, by mistake of law, come into the hands of an officer of a court of common law, the court would order him to repay it as soon as the mistake was discovered." These decisions were cited and followed in *Gillig v. Grant,* in the Appellate Division of the Supreme Court of New York, 23 N. Y. App. Div. 596, 49 N. Y. Supp. 78, where the court said: "The doctrine of these cases commends itself to both reason and justice." We desire to say here, as the court did in the New York case, that, in quoting from the English cases referred to with approval, we mean no reflection upon either the admin-

istrator in the case at bar or his counsel, but, quoting
again from the New York Appellate Division, we are
of the opinion that: "It would be a reproach upon
the administration of justice should the court, when
the question is squarely before it, hesitate to admon-
ish its officer to desist from further efforts to augment
his trust estate at the expense of one who is clearly
entitled to the money which that officer holds." By
that latter quotation from the New York decision, we
do not wish to be understood as applying that to the
evidence in the case at bar on the question of whether
a gift, in fact, was made, or to be considered as ex-
pressing an opinion on the right of the plaintiff to the
money she is here suing for. That question of fact
must be determined from sharply conflicting testi-
mony and it will be a question for the jury to deter-
mine when this case is redocketed in the trial court for
another hearing. We are not unmindful of the fact
that the defendant is being sued here in his individual
capacity and not as an administrator. However, he
is claiming the right to hold these funds, for which the
plaintiff is suing, as administrator. In other words,
his position is that the money here sued for belongs
to the estate of his deceased sister and that he is right-
fully in possession of that money as an officer of the
court and that being his position, following the ruling
laid down in the foregoing cases, we are of the opinion
that he may not be permitted to defeat the plaintiff's
recovery on the theory of voluntary payment or the
contention that she turned the money over to him
with full knowledge of the facts involved, and under a
mistake of law as to her rights. Inasmuch as he
claims the rights of an administrator as to this money,
he must be charged with such obligations as the law
places upon one occupying that position.

But while we are of the opinion that no question of
voluntary payment is involved in this case as a ques-
tion of law, nevertheless, we are further of the opinion
that the question of whether the plaintiff was moved

to turn the bank books and the check over to her brother by reason of a false representation, to the effect that he had an order from the court directing that she so do, was a material issue of fact, which counsel for the defendant should have been permitted to comment upon in his closing argument to the jury, as bearing on the question of whether there was a gift, as claimed by the plaintiff. As already stated, we have concluded from our reading of the record that the trial court did not permit that question of fact to be presented in the closing argument. The fact of false representation as alleged by the plaintiff in her declaration and denied by the defendant in his pleas, and reiterated by the plaintiff in her replications to those pleas, was an important element for the consideration of the jury, because if the jury believed from all the evidence that there was such a representation, then the apparent inconsistency of the act of the plaintiff in turning over the bank books to her brother may reasonably be explained. But if, on the other hand, the jury believe from all the evidence that there was no such false representation, then the act of the plaintiff, in turning over this property to her brother, as administrator, was so inconsistent with the fact of a gift, as claimed by her, as might reasonably lead the jury to find the issues on that question in favor of the defendant.

The defendant complains of the rulings of the trial court with reference to some of the instructions offered by the defendant. For the reasons we have already had occasion to refer to, we are of the opinion that all of the instructions submitted on the question of a voluntary payment were properly refused. With the apparent purpose of counteracting the defendant's contention that the plaintiff should not be permitted to recover because he (defendant) was under a legal obligation to account for the funds in his hands, as administrator, the plaintiff submitted an instruction, which the court gave, to the effect that an

administrator is not responsible to the heirs of a deceased person, nor required to account to the court appointing him, for any money or property which may have come into his possession after his appointment, unless such money belonged to the decedent at the time of his death and constituted a part of the decedent's estate at the time of his death, and the instruction proceeded: "If the jury believe from the evidence in this case that at the time of Margaret E. White's death the money in controversy did not belong to her and did not constitute a part of her estate, then the defendant owed no duty with regard to such money, either to the heirs of the deceased or to the Probate Court." In our opinion, the giving of this instruction was proper.

The defendant submitted a number of instructions referring to the question of the alleged false representation. The jury should have been properly instructed on that question, but it could not be said that the trial court erred in refusing the instructions which were submitted, as they were merely abstract propositions of law. On another trial of this case, proper instructions covering this issue should be presented.

The defendant complains further of certain rulings of the trial court on the admission of evidence. The court admitted testimony as to declarations of the deceased, tending to show an intention to give the property in question to her sister, the plaintiff. There is direct testimony in this case to the effect that this property was turned over by the deceased to the plaintiff. There are circumstances in the case which are more or less inconsistent with the fact that such delivery was a gift. That being the situation, in our opinion, the evidence as to the donor's statements was proper. *McIntosh v. Fisher,* 125 Ill. App. 511; *Smith v. Maine,* 25 Barb. (N. Y.) 33. For the same reason we are of the opinion that it was also proper for the court to admit evidence concerning the atten-

tions of the plaintiff to her deceased sister during her last illness.

A special interrogatory was submitted to the jury, reading as follows: "Did Margaret E. White, prior to her death, deliver to the plaintiff, Sadie Sando, her two bank books, which have been introduced in evidence, with intent to part with all interest in and dominion and control over said bank books and the money represented thereby, and to confer on the plaintiff and vest in her the absolute right, title and interest in said bank books and the money which they represented?" It is the contention that the trial court erred in submitting this special interrogatory to the jury, the argument being that it assumed that there was a delivery of the property and merely inquired as to the intent which the jury believed the deceased had in so delivering it. In our opinion the interrogatory is not subject to that construction. It would be more clear, however, if the words, "and if so, did she do so," were inserted after the word "evidence."

Inasmuch as there is to be another trial of this case, we feel that we ought to say that, in our opinion, the plaintiff should be permitted to testify, as she did in the first trial of the case, as to occurrences which arc alleged to have happened prior to the death of the deceased. The defendant is properly sued here, not as an administrator but in his individual capacity. *Havill v. Newton*, 202 Ill. App. 15. *Whitaker v. Shuman*, 161 Ill. App. 568. It is true that he claims the right to retain the money sued for, on the theory that it is a part of the estate of his deceased sister and, therefore, he, himself, will not be permitted to assume an attitude inconsistent with that position. It is for that reason that we have held that he, claiming the right to retain this money as an officer of the court, will not be permitted to invoke the rule as to voluntary payments in ignorance of legal rights. But

when it comes to the rules of evidence to be applied to the plaintiff as to the proof of her case, we must remember that the plaintiff may only recover in this case on the theory that the money she is suing for is not a part of the estate of her deceased sister, and that such being the case, the defendant, in wrongfully retaining it, is liable as an individual. Inasmuch as the plaintiff may recover only on the theory that the money sued for was not a part of her deceased sister's estate, the rules of evidence eliminating the testimony of a plaintiff in a suit against an administrator may not properly be applied here.

There was another offer of evidence on the part of the plaintiff, which was objected to by the defendant, and in our opinion the trial court erred in sustaining the objection. It was the plaintiff's contention that the chamois bag delivered to her by her deceased sister contained, among other things, a gold watch, which had belonged to the husband of the deceased. He was a brother of John W. White, the husband of the plaintiff's sister, referred to in the first part of this opinion as Mrs. John W. White. Both he and his wife testified in this case that the plaintiff turned this watch over to John within a day or two after Margaret White died. The plaintiff contended that this incident occurred before Margaret White's death. She testified that she had no conversation with Mrs. John W. White after her sister's death. In this connection, she further testified that at the time she turned this watch over, her sister, Mrs. John W. White, signed a receipt for it and that her brother-in-law, John W. White, was not present when she delivered the watch, but that only she and her sister Mrs. White were present. The plaintiff offered in evidence the receipt which she says her sister signed at that time. It reads as follows: ''Received of Sadie Sando, A. J. White's gold watch and chain, Mrs. John W. White, June 7th, 1921.'' In our opinion, that evidence was competent

and material. It tended to support the testimony of the plaintiff and indirectly to support her theory of the gift, as the receipt was dated June 7, and the testimony shows that Margaret White died on June 13,— six days later.

For the reasons we have given, the judgment of the circuit court is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*

O'CONNOR, P. J., and TAYLOR, J., concur.