Armin F. Hillmer et al., Appellants, v. Harry W.
Bishop, Appellee.

Gen. No. 42,096.

Heard in the first division of
this court for the first district at the February term, 1942.
Opinion filed November 30, 1942. Rehearing denied December
14, 1942.

LEONARD & LEONARD and OWENS & OWENS, all of Chi-
cago, for appellants; GORDON McLEISH LEONARD, ER-
NEST E. FREEMAN, JR. and GEORGE EDWARD LEONARD,
JR., all of Chicago, of counsel.

FREDERICK W. TURNER, JR. and JEROME F. DIXON,
both of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the
court.

The Chicago Bank of Commerce was being liqui-
dated by the Auditor of Public Accounts and creditors
of the bank brought a representative suit against the
former and final stockholders of the bank to enforce
the constitutional liability of the stockholders. When

the case reached the Supreme Court it held the maximum liability of the stockholders was $100 per share "but it was enforceable at $100 per share to the extent of debts accruing before February 7, 1931; as to debts accruing after that date it was enforceable at a maximum of $50 per share." *Hillmer v. Chicago Bank of Commerce,* 375 Ill. 266. Before this decision was rendered and during the pendency of the suit against the stockholders, Harry W. Bishop, a stockholder, was contesting the amount of his liability. July 15, 1938, a decree was entered approving the master's report and fixing Bishop's liability at $14,200. September 12, 1938, as a result of negotiations between the parties, an order was entered whereby the receiver was authorized to accept $10,450 in full settlement of Bishop's liability, $1,100 of which was to be paid "upon the entry of an order" and $275 to be paid the "first day of each month thereafter for 34 successive months until the full sum of $10,450 has been paid." The receiver was directed to receive the money and discharge Bishop's liability. Afterward Bishop made payments and April 2, 1941, tendered $50 to the receiver, which would bring the total amount paid by him to $7,200, claiming this was the full amount he was required to pay, namely $50 a share for 144 shares of stock, in accordance with the opinion of the Supreme Court handed down December 16, 1940, in which a rehearing was denied February 5, 1941. The tender was refused and April 4, Bishop filed his petition in the case, setting up the facts and praying that an order be entered modifying the order or decree theretofore entered, in which his liability was fixed at $10,450; that his liability be fixed at $7,200, and the receiver be authorized, upon the payment of the $50, to execute a release in full satisfaction. An answer was filed by plaintiffs to the petition, setting up the compromise entered into between the parties and approved by the court, fixing Bishop's liability at $10,450. The receiver also filed his answer denying

that Bishop was entitled to relief, the matter was referred to a master in chancery who found that in the negotiations for compromise carried on by Bishop, one of the attorneys for plaintiffs was of opinion that his liability should be limited to $50 per share, or a total of $7,200, and not $100 a share, as claimed by plaintiffs. That afterward Bishop's contention was sustained on an appeal taken by certain other shareholders, by the Supreme Court (375 Ill. 266) and the master recommended that the prayer of the petition be allowed. July 1, 1941, the court entered an order in accordance with the recommendations of the master, and plaintiffs prosecute this appeal.

Plaintiffs' theory of the case, as stated by their counsel is ''that the final consent decree rendered September 12, 1938, was made upon full disclosure of all relevant facts; that said decree had become final not only because it had been entered as a consent decree but also by lapse of time; that the validity of said decree had been recognized by defendant Bishop by his making certain payments thereunder; that said consent decree was supported by ample consideration in that plaintiffs forgave part of their claim against Bishop; that the court was without jurisdiction to disturb said decree.'' Counsel contend that the mistake as to the amount of Bishop's liability was a mistake of law, and in such case, the law does not warrant a rescission of what has been done, and in support of this, cite *Stover v. Mitchell,* 45 Ill. 213, where the court said: ''It has long been a settled principle that a voluntary compromise or settlement of doubtful and conflicting claims will not be set aside or disturbed in the courts, merely because the parties may have acted under a mistake as to the law.'' A further contention is that the court lacked jurisdiction to vacate the decree of September 12, 1938.

On the other side, counsel for Bishop admit the law as contended for by plaintiffs. They say that ''While it is the general rule that a mistake of law is not avail-

able to disaffirm a contract, an exception exists in case of a contract made with a court officer which is bottomed upon a mistake of law. In such a case disaffirmance may be obtained.'' As to Point 2, counsel for Bishop say: ''While an ordinary consent decree cannot be attacked in the same proceeding in which it was rendered, such doctrine cannot be extended to a proceeding of this kind where the court allows disaffirmance of one of its own contracts in which the consideration has failed.''

In *Sando v. Smith*, 237 Ill. App. 570, in considering the rule that money paid with full knowledge of all the facts but under a misapprehension as to the legal rights, could not be recovered, it was held that such rule was not applicable where the payments were made to an officer of the court, such as a receiver, a trustee in bankruptcy or an administrator or an executor. Mr. Justice THOMSON, in delivering the opinion of the court said: ''But, in our opinion, this rule that money paid with full knowledge of all the facts and under a misapprehension as to legal rights may not be recovered back is not applicable to the payments made to an officer of the court, such as a receiver or a trustee in bankruptcy or the administrator or executor of an estate,'' and in support of this the opinion cites *Ex parte James*, 9 Ch. App. 609; *Ex parte Simmonds*, 16 Q. B. Div. 308; *Gillig v. Grant*, 23 App. Div. 596, 49 N. Y. S. 78, and quoted from the Lord Justice, from the case first mentioned, in deciding that the creditor could recover the money back from the trustee; ''the Lord Justice said: 'The court, then, finding he (the trustee) has in his hands money which in equity belongs to someone else, ought to set an example to the world by paying it to the person really entitled to it. In my opinion the court of bankruptcy ought to be honest as other people.' The foregoing decision was followed in *Ex parte Simmonds*, 16 Q. B. Div. 308, where Lord Esher said that,

although the court will in general permit an individual litigant to do a 'shabby thing,'—namely, to retain money thus acquired,—it will not allow its own officer to do so. In that decision Lord Esher continued: 'It will direct its officer to do that which any right-minded man would do, viz., not to take advantage of the mistake of law. This rule is not confined to the court of bankruptcy. If money had, by mistake of law, come into the hands of an officer of a court of common law, the court would order him to repay it as soon as the mistake was discovered.' " And we quoted with approval from the *Gillig* case, decided by the Appellate Division of the Supreme Court of New York, which approved the law as announced in the two English cases, using this language: "The doctrine of these cases commends itself to both reason and justice." We there quoted further with approval from the New York court: "It would be a reproach upon the administration of justice should the court, when the question is squarely before it, hesitate to admonish its officer to desist from further efforts to augment his trust estate at the expense of one who is clearly entitled to the money which that officer holds."

We agree with, and adhere to what we said in the *Sando* case. Moreover, Bishop is not seeking to have any money returned to him and there is no contention that under the law as announced by the Supreme Court (375 Ill. 266) he was not liable for more than $7,200.

The order of the superior court of Cook county appealed from is affirmed.

*Order affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.