In the Matter of the Liquidation of LAWYERS TITLE AND GUAR-
ANTY COMPANY (160 East 48th St., New York City).

SIDNEY S. PRINCE FOUNDATION, INC., on Behalf of Itself and
Other Certificate Holders Similarly Situated, Appellant;
CHASE NATIONAL BANK OF THE CITY OF NEW YORK et al.,
Respondents.

First Department, June 11, 1943.

Lawrence S. Greenbaum of counsel (Jonas J. Shapiro and Theodore S. Jaffin with him on the brief; Greenbaum, Wolff & Ernst, attorneys), for appellant.

A. Donald MacKinnon of counsel (Milbank, Tweed & Hope, attorneys), for respondents.

TOWNLEY, J. This proceeding was brought to determine whether a priority exists in favor of certain mortgage certificates sold to the general public as against other certificates of the same issue retained by the Lawyers Title and Guaranty Company (hereinafter called the Title Company) and transferred by it as collateral for loans made to it.

Prior to 1930, the Title Company acquired Mortgage No. 424,421 in the principal amount of $2,231,000. Certificates amounting to $2,109,913.11 were sold to the general public. Three certificates, Nos. 5, 315 and 535 amounting to a total of $121,000 were claimed to be sold to and registered in the name of the Title Company's wholly owned subsidiary, the Lawyers Trust Company. These certificates were reacquired by the Title Company before they were pledged by the Title Company as hereinafter described.

In January, 1933, the Title Company borrowed $3,000,000 from the Chase National Bank (hereinafter called the Chase Bank) and pledged as collateral for this loan all of the stock of the Lawyers Trust Company. Later, in order to release the Lawyers Trust Company stock and make possible a consolidation between it and the County Trust Company, the certificates involved in this proceeding along with other collateral were deposited with the Chase Bank as substitute collateral for the $3,000,000 loan. This substitution was made as of August 1, 1933. The Superintendent of Insurance was appointed rehabilitator of the Title Company on August 11, 1933, and a liquidation order was entered on January 21, 1936. The Mortgage Commission took jurisdiction of the mortgage and registered these certificates in the name of the Chase Bank as collateral security for loans to the Title Company. On November 27, 1936, the Superintendent of Insurance, as liquidator entered into what has been designated a settlement agreement with the

Chase Bank. In general this agreement provided for an absolute transfer to the Chase Bank of the collateral held by it and a surrender and cancellation of the notes representing the original $3,000,000 loan. This agreement provided that the Chase Bank " in place of its title as pledgee, is to have an absolute and indefeasible title " to certain collateral including the three certificates involved in this proceeding. This settlement agreement was approved by the court on March 5, 1937.

Under a plan of reorganization of the underlying mortgage, one Henry Weiner was appointed trustee of the mortgage in reorganization on June 4, 1937. Mr. Weiner shortly after his appointment announced that he had refused to pay interest on the certificates held by the Chase Bank for the reason that he could not concede that " this portion of the mortgage is on a parity " with the holdings of other certificate holders until the question should be determined by the court. The Chase Bank then applied to the Supreme Court for an order directing the trustee to recognize certificates Nos. 5, 315 and 535 as on a parity with all other certificates. No notice of this application was given to the certificate holders. An order was entered December 22, 1937, directing the respondent Weiner to register the certificates held by the Chase Bank in accordance with the terms of the order of June 3, 1937, approving the plan of reorganization of Mortgage No. 424, 421 and further ordering that the Chase Bank should share ratably and on a parity with all other certificate holders in the distribution of the trust estate. The order further recited that counsel for the trustee and the Mortgage Commission had submitted a memorandum in opposition and that counsel for the Superintendent of Insurance had submitted a memorandum in favor of the application. The trustee did not appeal from this order.

The respective rights attaching to the certificates held by the appellant and those similarly situated and the certificates specifically involved in this proceeding must be determined as of the date fixed by the liquidation order of January 21, 1936.

Section 404 (now § 514) of former article 11 (L. 1932, ch. 191, § 1) of the Insurance Law provides in part: " The rights and liabilities of any such insurer and of its creditors, policy holders, stockholders, members and/or all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order directing the liquidation of such insurer * * *."

The Court of Appeals in *Matter of Empire State Surety Co.* (214 N. Y. 553) held that the date fixed by the original order

of liquidation controlled and that this date could not be changed by any subsequent order of the court.

The situation existing on January 21, 1936, the date of the liquidation order was as follows: There was this large group of certificates sold to the public and there were these three certificates held by the Chase Bank as collateral for its loan. The question was whether certificates held as collateral under these circumstances had the same rights as certificates sold to the public.

The Court of Appeals had occasion recently to pass upon this question of priorities in *Matter of Lawyers Title & Guaranty Co. [Netacos Corp.]* (287 N. Y. 264). In that case this same Title Company had sold certificates representing a part of a mortgage to the public and pledged certificates representing the balance as security for a loan to it. The court in its opinion (p. 272) said: " It cannot be doubted that, under the rule of *Pink* v. *Thomas* [282 N. Y. 10], if, instead of pledging Certificate No. 3, the company had retained that certificate for itself, Certificate No. 1 would be entitled to priority. Nor can there be doubt that if, instead of pledging Certificate No. 3, the company had *sold* that certificate to R.F.C., Certificate No. 1 would share in the security *pro rata* with Certificate No. 3. In the present proceeding, however, Certificate No. 3 was not sold — it was pledged to R.F.C. by the company as collateral to its loan. In that transaction R.F.C., as pledgee, acquired what may be termed a special property in the hypothecated certificate — a ' " possessory right acquired under the bailment." ' *(McCoy* v. *American Express Co.,* 253 N. Y. 477, 482.) But the general property — the legal title to the certificate — remained in the company as pledgor. *(Markham* v. *Jaudon,* 41 N. Y. 235, 240, 241; *Keller* v. *Halsey,* 202 N. Y. 588, 597. Cf. *Griffey* v. *New York Central Ins. Co.,* 100 N. Y. 417, 422; *Harding* v. *Eldridge,* 186 Mass. 39, 42.) * * * In the hands of R.F.C. as pledgee, Certificate No. 3 represents no rights which did not attach to it while it was in the hands of the company. To grant to R.F.C. as pledgee of Certificate No. 3 the same rights as those to which the owner of Certificate No. 1 is entitled, would allow the company to do indirectly what it cannot do directly. * * *.

" The order of the Appellate Division should be modified to provide that Certificate No. 1 of mortgage No. ' Q ' 25088 shall be entitled to priority over the interest of both the liquidator and R.F.C. in Certificate No. 3 * * *."

It is obvious from this that the rights which the Chase Bank had at the time of the liquidation order were those of the Title Company and that the effect of the liquidation order was to establish those rights permanently as of that date. The settlement agreement transferred to the Chase Bank as owner only such rights as the certificates then possessed. To hold otherwise would be to create a different relation among the certificate holders from that which existed as of the liquidation date.

The claim is made that the order of the Supreme Court directing that the certificates then held by the Chase Bank, Nos. 5, 315 and 535, were to be treated on a parity with those held by the general public is determinative of the question here presented so far as those certificates are concerned. This claim cannot be sustained. The certificate holders were not made parties to that proceeding. The Mortgage Commission in that case as well as the trustee opposed the granting of the priority. But they had no interest in litigating the rights of these certificate holders. A trustee for all certificate holders is not in a position to choose between a group of *cestuis* and litigate their rights. This principle of law was very clearly laid down in *Colorado & Southern Ry. Co.* v. *Blair* (214 N. Y. 497) and *Matter of Straut* (126 N. Y. 201). As Judge MILLER said in the former case (p. 516): " Bondholders invest their money on the faith of the pledged security and unless the mortgage or trust deed authorizes a change or substitution they have a right to rely upon that particular security. It would substitute a new contract to allow a trustee without authority either to compromise the security or to represent the bondholders in a suit, whose effect is to modify the contract. The bondholders themselves have a right to be heard in such a suit and no one not authorized to do so can represent them." And in *Matter of Straut (supra)* it was said: " * * * If the purpose of the action had been, among other things, to determine rights as between the beneficiaries themselves, or as between the trustees and the beneficiaries, then it would have been necessary to bring them in as parties."

We, therefore, find that there has been no final order determining that the certificates held by the Chase Bank are equal in priority with those held by the appellants in these cases.

The claim is made that the failure of the certificate holders to protest against the payments made to the Chase Bank as shown on the various accountings by the trustee created an estoppel in favor of the Chase Bank which substantially affects the question of priority. This estoppel, if any, would be impor-

tant only in connection with the petitioner's demand for the return of such payments. It would not affect the present status of the certificates or influence the determination of the question of priority.

Petitioner's right to a refund of the moneys paid cannot be determined upon the record before us. The order should be reversed and the matter remitted to the Special Term for hearing and determination in accordance with this opinion, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER and COHN, JJ., concur.

Order unanimously reversed and the matter remitted to the Special Term for hearing and determination in accordance with opinion, with costs to the appellant to abide the event. Settle order on notice.