In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY (160 EAST 48TH ST., NEW YORK CITY).

SIDNEY S. PRINCE FOUNDATION, INC., on Behalf of Itself and Other Certificate Holders Similarly Situated, Petitioner; CHASE NATIONAL BANK OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, Additional Special Term, New York County, October 5, 1944.

Lawrence S. Greenbaum, Jonas J. Shapiro, Theodore S. Jaffin and Monroe R. Lazere for petitioner.

William M. Evarts and Nathan Katz for Chase National Bank of the City of New York, respondent.

HECHT, J. This proceeding was commenced by the petition of the Sidney S. Prince Foundation (hereinafter referred to as Prince Foundation) on behalf of itself and all other similarly situated holders of certificates issued by the Lawyers Title and Guaranty Company (hereinafter referred to as the Title Company) on Mortgage No. 424,421.

In its petition Prince Foundation sought: (1) an adjudication that participation certificates Nos. 5, 315 and 535 owned by respondent the Chase National Bank (hereinafter referred to as Chase Bank) in the mortgage are subordinate to the other certificates; (2) an order restraining Henry Weiner, as trustee under the plan of reorganization, from paying out to the Chase Bank any moneys under the said certificates until the other certificate holders have been paid the principal amount and interest due on their certificates; and (3) an order directing the Chase Bank to return to the trustee all moneys previously paid to it upon the aforesaid certificates.

The application was originally denied by the Justice then presiding at this part (N. Y. L. J., July 22, 1942, p. 173, col. 4). This order was reversed by the Appellate Division (266 App. Div. 322). That court held: (1) that the certificates owned by the Chase Bank were subordinate to the certificates of petitioner and other certificate holders similarly situated; (2) that the

trustee should be restrained from paying out any moneys to the Chase Bank under its certificates until the full payment had been made to the other certificate holders; and (3) remitted to this Special Term for hearing the issue with respect to the right of the other certificate holders to obtain a refund from the Chase Bank of all moneys previously received by it upon its certificates.

Chase Bank appealed to the Court of Appeals from the order of the Appellate Division (293 N. Y. 675). That court dismissed the appeal on the ground that the orders were interlocutory and not final.

Thereafter a hearing was had before this court on the single issue remitted by the Appellate Division, namely the right of the petitioner and other certificate holders similarly situated to a refund of the moneys erroneously paid out to the Chase Bank upon its subordinate certificates. The parties stipulated that the moneys paid to Chase amount to $60,965.86. Petitioner seeks a refund of this money and in addition asks for an order directing the trustee to distribute to certificate holders other than Chase $6,655, representing interest accumulated upon the said certificates since the order of the Appellate Division and now held by the trustee for the account of Chase Bank.

As to this latter sum, respondent is in the same position it would be in as to all future dividends while its certificates remain subordinate. There is no doubt as to the right of the petitioner to an order directing the trustee to apply this sum, which has never been paid to Chase Bank, for distribution on the other certificates.

The record discloses that payments totalling $22,850.86 were made to Chase Bank prior to the acquisition by it of the *ownership* of the certificates on April 7, 1937, under the following circumstances:

Prior to 1930 the Title Company acquired title to mortgage No. 424,421 in the principal amount of $2,231,000 and thereafter from time to time issued and sold Guaranteed First Mortgage Participation Certificates therein in the aggregate principal amount of $2,230,313.11, including the Chase certificates, and a certificate for $30,000 principal amount sold to petitioner on March 24, 1930.

As to the Chase certificates, they were all originally sold by the Title Company to Lawyers Trust Company, its wholly owned subsidiary, and distributions on these certificates made on a parity with all other outstanding certificates.

Lawyers Trust Company was merged in 1933 with the County Trust Company, and in connection therewith Lawyers Trust Company, in exchange for other collateral, assigned to Chase Bank certificates Nos. 5, 315 and 535, and other certificates, not in issue in this case, to be held by Chase as substituted collateral for loans aggregating $3,000,000 that had been made by it in January, 1933, to the Title Company. On August 11, 1933, the Superintendent of Insurance of the State of New York became rehabilitator of the Title Company and on November 20, 1933, an agreement was made between the Title Company, the Superintendent and Chase Bank, whereby the latter agreed to service the collateral pledged with it for the foregoing $3,000,000 " as Agent and Attorney for the Rehabilitator ". Pursuant to the agreement, Chase maintained a special account entitled " The Chase National Bank of the State of New York, Agent and Attorney for the Rehabilitator of Lawyers Title & Guaranty Company ". Into it were deposited all kinds of receipts from the collateral then held by Chase for its loan to the Title Company, and from it were made all kinds of disbursements required for the maintenance, management and servicing of said collateral.

On January 21, 1936, the Superintendent became Liquidator of the Title Company, and thereafter the Mortgage Commission of the State of New York took over and assumed jurisdiction of mortgage No. 424,421, and continued to hold it until June 4, 1937. At the request of Chase, the Mortgage Commission registered the Chase certificates in the name of Chase as collateral security for the Title Company's loan in default.

On November 27, 1936, Chase and the Superintendent as Liquidator entered into a settlement agreement whereby the servicing agreement was terminated. Two notes of $1,500,000 of the Title Company, previously issued by it and held by Chase as evidence of the $3,000,000 loan to the Title Company, were canceled, Chase returned to the Liquidator certain items of the collateral held for the loan of an estimated market value of $998,732.12, and title to the remainder of the collateral was vested in Chase, including title to the certificates referred to herein, on April 7, 1937.

Frank B. Muller, Assistant Comptroller of Chase, called as a witness for respondents, testified (Prince Foundation, Minutes of Hearing) that the proceeds of the account described above were applied to the protection of the collateral for the loan made to the Title Company, and that a portion of the moneys that were in the account on May 13, 1936, namely $160,166.68,

was by mutual agreement with the Superintendent applied on account of interest accrued on the $3,000,000 loan.

The situation, as I see it, was that until consummation of the settlement agreement on April 7, 1937, the debtor, through the Superintendent of Insurance, retained the general property in the pledged collateral, and Chase held the special property in the collateral in its capacity of pledgee. In receiving into this fund these interest distributions upon the certificates, Chase was acting in a dual capacity, first as the Superintendent's agent under the servicing agreements, and second as pledgee. Neither of these capacities conferred upon Chase any right to take such distributions and freely dispose of them as its own. As pledgee it could only hold such distributions as security for the debt, in the same manner as the collateral originally pledged (Jones on the Law of Collateral Security and Pledges [3d ed.], § 399). As agent it was under an obligation to account for these funds to its principal, with only the further limited right under the agreement to apply the fund to the protection of the collateral. In both capacities it had the duty to account for the funds to the Superintendent as representative of its debtor. The only money in this changing fund into which these interest distributions had been received that was ever received by Chase as its own, is this sum of $160,166.68, which was paid to Chase from the fund on May 13, 1936. At the time such payment was made the distributions of interest upon the certificates that had been paid into this fund had completely lost their identity and character as such so far as Chase was concerned.

I conclude, therefore, that Chase had not received as its own any interest payments made prior to April 7, 1937, and cannot be required to return them.

The next question presented is Chase's right to retain payments received by it subsequent to April 7, 1937, while it was the record owner of the certificates.

It is admitted that the payments to Chase were made as the result of a mistake of law, namely that the certificates held by Chase were entitled to be considered on a parity with all other certificates issued. The trustee herein was appointed on June 4, 1937. Shortly thereafter he refused to recognize the parity of the certificates held by Chase and to pay interest thereon. Chase moved for an order compelling recognition of its parity status and its application was granted and an order entered on December 22, 1937. The Appellate Division has held that this order is not binding on the certificate holders who were not made parties to that proceeding (266 App. Div. 322, *supra*).

On January 15, 1942, the Court of Appeals passed upon the question of parity in *Matter of Lawyers Title & Guaranty Co.* (287 N. Y. 264) and held that certificates similar to those here involved were not entitled to parity. It is presumed that this decision was always the law and that the parties hereto are bound thereby despite the prior decision of this court. (*Doll v. Earle*, 59 N. Y. 638.)

Until the enactment, effective April 29, 1942, of section 112-f of the Civil Practice Act, New York followed the general rule that moneys paid under a mistake of law are not recoverable (see authorities collected in Note, 53 A. L. R. 949, 951–952). An exception to the general rule exists where payment is made to an officer of the court. (*Gillig v. Grant*, 23 App. Div. 596.) Petitioner seeks to remove the case at bar from the effect of the mistake of law rule by claiming a further exception exists where one *cestui* (petitioner) seeks to recover from another *cestui* (Chase) moneys paid out by a trustee. This is the nub of petitioner's claim.

It is not supported by the cases cited. In *Gillig v. Grant* (*supra*) and *Goldman v. Staten Island Nat. Bank & Trust Co.* (98 F. 2d 496) the general rule that moneys paid under a mistake of law are not recoverable was recognized but was held inapplicable where the payments were made to an officer of the court. In *Lupton v. Lupton* (2 Johns. Ch. 614) the action was brought by legatees seeking payment of their legacies in specific amounts of money, payable to them upon their attainment of certain ages, against devisees who had previously received a distribution of the proceeds of real property, and against the executor for wasting the assets of the estate. The court held that the proceeds of the real estate were not chargeable with plaintiffs' legacies, and therefore dismissed the action against the devisees but held the executor liable for the deficiency in the legacies. The case has no application to the facts herein.

In *Matter of Accounting of Morgan* (99 N. Y. 145) a trustee under a general assignment paid moneys to one creditor which belonged to another. Plaintiff was a creditor of the seventh class and defendant a creditor of the eighth class. The trustee believed he had enough money to pay all claims and paid defendant first. As events turned out he was wrong and his accounts were insufficient to pay all claims. The court permitted recovery of the amounts paid to the junior claimant.

In *Buffalo Trust Co. v. Leonard* (154 N. Y. 141) a residuary legatee was paid before a specific legatee with the result that there were no funds with which to pay the latter. Recovery

was allowed by the specific legatee against the residuary legatee.

In the latter two cases there was a difference in right to priority of payment between the parties and the court permitted recovery, but in both cases there was not present the factor of mistake of law in payment but merely a question of mistake of fact on the part of the fiduciary.

*Equitable Trust Co.* v. *Miller* (185 N. Y. S. 661, affd. 197 App. Div. 391, affd. 233 N. Y. 650) seemingly supports petitioner's contention. That was an action by a trustee to settle its account and to credit itself as against the defendant beneficiary for a payment previously received by her out of income which had accrued during the lifetime of a deceased beneficiary which, under the terms of the deed of trust, should have been paid to the deceased. The court rendered judgment for the plaintiff. The cases cited in the opinion do not, however, support the conclusion reached by the court. The judge indicated in his opinion that he had serious doubt as to whether the mistake in that case was one of law or fact and stated additional reasons to support his decision. Under the circumstances the affirmance by the appellate courts may not be taken as approval of the holding of the court at special term that the case came within the exception to the doctrine that payments made under a mistake of law are not recoverable.

I believe that the weight of authority impels a holding that the facts set forth herein do not bring petitioner within the exception above stated and as a result it may not recover the moneys admittedly paid to Chase under a mistake of law (see *Matter of Welton,* 141 Misc. 674, and cases cited therein).

Respondent Chase has interposed several defenses to petitioner's claim. It asserts that the six-year Statute of Limitations (Civ. Prac. Act, § 48) is applicable and as a result the recovery of any interest payments made prior to March, 1936, is barred. The allegations contained in the petition justify the conclusion that it is based on quasi contract for money had and received. The fact that it was brought by petitioner for the benefit of itself and other certificate holders similarly situated does not alter the situation.

Respondent claims petitioner, by reason of its dilatory conduct, is estopped from now collecting the interest payments made. The record before me does not contain facts sufficient to support Chase's claim that as a result of petitioner's apparent acquiescence in the allocation of the interest payments it, Chase, changed its position to its detriment and damage.

Finally, Chase urges that recovery is barred by the doctrine of *res judicata*. As required by the declaration of trust, the trustee herein, upon notice to all certificate holders, obtained orders of this court approving his annual accounts. The accounts reflected payments of interest on all of the certificates, including the Chase certificate. In each instance the notice of motion was incorporated in a trustee's bulletin, which set forth a summation of the account and the proposed budget for the ensuing year. As early as September 30, 1937, the trustee advised certificate holders of his refusal to pay interest on the Chase certificates on his contention that they were not entitled to parity. Information as to the progress of the litigation with Chase and the final disposition of the claim was given to certificate holders in subsequent bulletins (Bulletin No. 3).

By the express terms of the declaration of trust the orders approving the accounts were " binding and conclusive upon all of said certificate holders ". The rule with respect to the binding force of decrees settling the accounts of fiduciaries has been stated as being " Every issue actually or potentially tendered by the account, to which no objection is asserted, is rendered *res judicata* by the entry of a decree judicially settling such account." (*Matter of Weir,* 182 Misc. 845, 847, and cases cited therein.)

Petitioner's argument that an accounting is *res judicata* only as to the accounting party is untenable. I have found no case where the court has allowed a recovery against one of the parties to an accounting who may have been overpaid to the detriment of another.

On the facts presented herein, I find that there was sufficient disclosure of Chase's claim to put certificate holders upon inquiry, and having failed to make inquiry they are bound by the several orders approving the annual accounts.

Petitioner is entitled to an order directing the trustee to distribute to certificate holders other than Chase $6,655, representing interest accumulated since the decision of the Appellate Division herein.

Motion is granted to the extent indicated; otherwise denied. All objections made by petitioner to the reception of proof are overruled. Settle order.