In the Matter of the Liquidation of LAWYERS TITLE AND GUARANTY COMPANY (160 EAST 48TH ST., NEW YORK CITY).

SIDNEY S. PRINCE FOUNDATION, INC., on Behalf of Itself and Other Certificate Holders Similarly Situated, Appellant-Respondent; CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Respondent-Appellant, and HENRY WEINER, as Trustee, Respondent.

First Department, December 28, 1945.

*Lawrence S. Greenbaum* of counsel (*Jonas J. Shapiro,* *Theodore S. Jaffin* and *Monroe R. Lazere* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys), for appellant-respondent Sidney S. Prince Foundation, Inc., on behalf of itself and other certificate holders similarly situated.

*William M. Evarts* of counsel (*Rudolf B. Schlesinger* with him on the brief; *Milbank, Tweed & Hope,* attorneys), for respondent-appellant Chase National Bank of the City of New York.

CALLAHAN, J. Upon a prior appeal in this proceeding we held that three certain participation certificates, owned by the Chase National Bank of the City of New York, in a bond and mortgage known as No. 424421, were subordinate to other certificates of that issue, including those owned by petitioner herein. We issued an order restraining Henry Weiner, as trustee under a plan of reorganization, from paying any money upon said certificates to the bank until other certificate holders had been paid in full, and directed the trial of the issue as to the right

of the petitioner and other certificate holders to obtain a refund of moneys previously paid to the bank. (266 App. Div. 322.)

The issues concerning the right of refund have been tried and determined. Both sides appeal from an order of the Additional Special Term which denies any right of refund as to moneys received prior to the date of the commencement of this proceeding, but directs payment of sums received after that date.

The amounts claimed represent distributions of interest improperly made on the three subordinate certificates from November, 1933, to date. For the sake of convenience in discussing the factual and legal questions, the claim may be divided into four parts: First, the sum of $22,850.86 received by the bank between November, 1933, and April 7, 1937; second, the sum of $32,670 received by the bank between April 7, 1937, and the date of the commencement of the present proceedings; third, the sum of $5,445 paid to the bank by the trustee after the commencement of these proceedings; and, fourth, the sum of $6,655 in the hands of the trustee, but not distributed. A supplemental claim for the last-mentioned sum was allowed by the Special Term.

As to the $22,850.86 received between November, 1933, and April 7, 1937, we find that the bank, during that period, held the three disputed certificates, together with numerous other securities consisting largely of mortgages or participations in mortgages, as collateral for a loan of $3,000,000 made to the Lawyers Title and Guaranty Company (hereinafter called " Title Company "). During this period the bank was also acting as servicing agent for the State Superintendent of Insurance, who was then the rehabilitator or liquidator of the Title Company. All moneys received by the bank as servicing agent, including interest on the three certificates, were placed in a special account referred to as an account held as " agent and attorney for the Rehabilitator." Disbursements for the servicing of the collateral were paid out of the special account. The bank was not servicing mortgage No. 424421, and none of the moneys received as distributions on these certificates was required to be used for the protection of said mortgage. The funds in the special account were used for the protection of the other collateral. The only money paid directly to the bank out of the special account was a payment of interest on the loan of $3,000,000, amounting to $160,166.68. On April 7, 1937, the loan and the servicing agreement were terminated by what is referred to by the parties as a " settlement agreement."

In brief, by the terms of this settlement agreement the bank, with the consent of the State Superintendent of Insurance, took an absolute transfer of part of the collateral, including the three certificates involved herein, and canceled the notes, delivering and releasing the remaining collateral to the superintendent, free from any lien or claim of the bank. In connection with the settlement, the balance of the funds in the special account was taken over by the bank, due credit being given therefor.

The Special Term held, and we think correctly, that under such circumstances the bank was not liable to make restitution of distributions received during this period. The bank, as pledgee, had received the same as accumulations on the collateral, and thus had only a special property, i.e., a possessory right acquired under the bailment. The general property — the legal title — remained in the Title Company or its trustee, as pledgor. (266 App. Div. 322.) The bank either disbursed the interest distributions, as agent for the superintendent, or retained them as payment on the loan.

Although the bank had received the distributions from a trustee and was charged with constructive knowledge of the subordinate nature of the three certificates, it had no knowledge in fact of any adverse claim by any certificate holder before it returned the amounts received. The superintendent, in making payment of the loan and interest thereon, committed no breach of trust. The distributions eventually found their way back into the trust estate, either as moneys disbursed for account of the estate, or moneys credited on the debt of the Title Company, payment of which released collateral to the estate.

The present claims for restitution are controlled by equitable principles. In the end, the trust estate lost nothing as the result of the distributions made to the bank during this period, and the petitioning beneficiaries had the same opportunity to be paid in full as if no distribution had ever been made. Under the circumstances, we affirm so much of the order of Special Term as holds that the petitioner is not entitled to the refund of any moneys paid to the bank prior to April 7, 1937.

Having rejected this part of the claim on the merits, it becomes unnecessary to consider the question as to whether the six-year or the ten-year Statute of Limitations applies, because the proceeding was commenced within six years of April 7, 1937.

We next consider the disposition of the claim for $32,670 distributed between April 7, 1937, and the date of the commence-

ment of these proceedings. These moneys the bank received and retained as owner of the certificates.

The bank claims: First, that as the moneys distributed by the trustees were paid under mistake of law, they may not be recovered; second, that the judicial settlements of certain annual accounts filed by the trustee Weiner between 1938 and 1943, were binding adjudications estopping petitioner, under the rule of *res judicata*, from recovering any sums for the periods covered by said accountings; and third, that the claims are barred by various equitable considerations, including laches.

Special Term upheld the first two contentions, but overruled the third. We think that all three should have been overruled.

There is little doubt that the moneys distributed by the trustee were paid under mistake of law. The mistake, however, was solely that of the trustee. We deem that the rule barring recovery of sums paid under mistake of law, which prevailed in this State until April 29, 1942, the date when section 112-f of the Civil Practice Act became effective, has no application to the present claim by one beneficiary against another to recover payments improperly made by a trustee. The beneficiaries whose rights were defeated committed no mistake either of law or of fact. They are not asking to be relieved from their own act or deed, performed with knowledge of the facts, though under mistake as to the law, but from the acts performed by another. It would seem clear, upon principle at least, that the rule against the recovery of money paid under mistake of law should not apply to payments made by a trustee, or other fiduciary, of funds, the equitable ownership of which was in third persons. While our attention has not been called to any controlling authority of this State precisely in point, the general principle of law is firmly established that whoever receives property knowing it to be the subject of a trust and to have been transferred by the trustee in violation of his duty or power, takes it subject to the right of the trustee or the *cestui que trust* to reclaim possession (*Wetmore* v. *Porter*, 92 N. Y. 76; *Zimmerman* v. *Kinkle*, 108 N. Y. 282; *Buffalo Trust Co.* v. *Leonard*, 154 N. Y. 141). Although this case involved no element of fraudulent transfer or tortious act, this would not affect the application of the general principle above stated insofar as the right to obtain restitution is concerned (2 Scott on Trusts, §§ 288, 291). That the payment was made by the trustee under mistake of law does not appear, by reason or authority, to afford any rational basis for engrafting any exception upon this general principle.

In *Equitable Trust Co.* v. *Miller* (185 N. Y. S. 661, affd. 197 App. Div. 391, affd. 233 N. Y. 650) Mr. Justice BIJUR, at Special Term, stated in his opinion that mistake of law by the trustee would not prevent recovery by a beneficiary. Although the affirmance of the order in the case last cited may well have rested on other grounds, it may be worthy of note that the question was presented by the briefs filed with the appellate courts.

Professor Scott, in his work on Trusts, states that the rule of mistake has no application to payments of the nature involved herein. He says: " There is no doubt that where the trustee has paid to one beneficiary what should have been held for or paid to other beneficiaries, the other beneficiaries are entitled to have the amount of the overpayment made good by the beneficiary thus overpaid, either by compelling him personally to repay the amount or by requiring the trustee to withhold the amount from the share of the beneficiary who is overpaid, unless the beneficiary has so changed his position that it would be inequitable to compel him thus to make restitution. Otherwise the beneficiary would be unjustly enriched at their expense. The other beneficiaries are not in any way responsible for the overpayment, and as far as they are concerned it is immaterial whether the overpayment was made as a result of a mistake made by the trustee or whether the trustee deliberately made the overpayment." (2 Scott on Trusts, § 254.2.) (See, also, Restatement, Restitution, § 45, p. 187.)

We deem that the defense that the trustee paid the moneys under mistake of law is without merit.

This brings us to a consideration of the defense of *res judicata*. It appears that in each year from 1938 to 1943, the individual trustee, Henry Weiner, pursuant to the declaration of trust, filed annual accounts of receipts and disbursements with the Special Term of the Supreme Court which had appointed him. Notices of the settlement of these accounts were given to the individual certificate holders. Summaries of the figures involved were also sent to the individual certificate holders. The accounts were duly approved. The summary attached to each notice of settlement merely showed the rate of interest paid and the total amount disbursed therefor. In some years the aggregate amount of all certificates outstanding was also stated, but no direct statement was ever made of any payment of interest to the bank. In some years, but not in all, a mathe-

matical computation might have been made from which it would have been possible to ascertain that all certificates of the issue had been receiving like interest distribution. In addition to this, the individual trustee on December 31, 1937, in a "Bulletin" issued by him, stated that the bank's certificates would be treated on a parity with all others, pursuant to an order of the Supreme Court dated December 22, 1937.

An accounting decree would not be *res judicata* as against a beneficiary, even as to a trustee, unless the proceedings clearly disclosed the transactions intended to be embraced therein. The burden is on one claiming an estoppel by judgment to establish such disclosure. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Matter of L. I. L. & T. Co.* [*In re Garretson*], 92 App. Div. 1, affd. on opinion below, 179 N. Y. 520.) We deem that we are required to hold that it cannot be said on this record that the trust beneficiaries were aware of all the facts and were fully advised of their legal rights. (See *Matter of Lewisohn*, 294 N. Y. 596.)

The provision in the declaration of trust with respect to the binding nature of the accounting proceedings was for the benefit of the trustee, and could have no effect on claims between beneficiaries *inter sese,* at least not without due notice of the presentation of such matters to the court upon the accountings.

As to the remaining defenses, we agree with the holding of Special Term that there is no merit in the claim that petitioner should be defeated by laches. Nor do we find any reason for defeating the petitioner's claim upon any of the other alleged equitable considerations advanced by the bank, resting on the theory that the moneys were paid and received in good faith, in satisfaction of an honest claim and pursuant to the direction of a competent court. The moneys, in fact and in law, belonged to the other certificate holders, and the bank was charged with notice of this. It is required to make restitution. Insofar as the claim for equitable consideration may rest on the effect of the order of the Supreme Court dated December 22, 1937, we have already held that the certificate holders were not bound by such order (266 App. Div. 322).

We have given due consideration to the bank's contention concerning the refund of $5,445, the amounts distributed by the trustee after the commencement of this proceeding, and the directions to the trustee concerning the $6,655 accumulated. We find no sufficient reason for disturbing the ruling of Special Term as to these parts of the claim.

The order appealed from should be modified so as to grant petitioner's motion directing restitution of the sum of $38,115, and as so modified affirmed, without costs.

MARTIN, P. J., TOWNLEY and COHN, JJ., concur; WASSER-VOGEL, J., dissents and votes to affirm.

Order modified so as to grant petitioner's motion directing restitution of the sum of $38,115, and as so modified affirmed, without costs. Settle order on notice.