In the Matter of the Accounting of FIRST TRUST & DEPOSIT COMPANY, as Trustee and Administrator of the Estate of GEORGE BAUSCH, Deceased, Appellant-Respondent. CARL L. BAUSCH et al., Respondents-Appellants.

Fourth Department, July 9, 1952.

*James G. Dale* for respondents-appellants.

*H. Duane Bruce* for appellant-respondent.

Vaughan, J. We have for consideration cross appeals by the First Trust & Deposit Company, as trustee and administrator of the estate of George Bausch, deceased, and by seven objectant beneficiaries, in an accounting proceeding for the judicial settlement of the accounts of said First Trust & Deposit Company, hereinafter called " bank ".

The decedent George Bausch died a resident of Onondaga County on January 3, 1929, leaving a purported last will and testament dated August 10, 1928, and a codicil thereto, dated September 9, 1928. In the codicil, the bank was named executor and trustee. Decedent left him surviving a widow, Grace E. Bausch, and four children.

On January 9, 1929, the bank filed a petition for probate of decedent's said will and codicil. Objection to probate was filed by three of the present objectors. Thereafter and during the proceedings on the petition for probate all of the decedent's distributees, his widow and four children, entered into a compromise agreement dated April 29, 1929, which was subsequently approved by Surrogate's decree of July 29, 1929.

The agreement, among other things, provided that the proceedings for probate of the will be withdrawn and created a trust of substantially all of decedent's properties with the bank as trustee thereof. The one clause of the agreement with which we are particularly interested, made decedent's Syracuse residence at 400 Walnut Place a part of the trust property, the widow to have the use and occupancy thereof for life unless sold with her written consent, in which event, she was to have all of the income from the proceeds of the sale. The maintenance and upkeep of the house was to be borne by the trust. This agreement of April 29, 1929, was thereafter modified by agreement dated February 14, 1930, authorizing the trustee to sell the Walnut Place property to Syracuse University for $50,000. The sale was consummated on Saturday, March 29, 1930. Five days later and on Thursday, April 3, 1930, $46,000 of such proceeds was invested in eight real estate mortgages purchased by the trustee from the portfolio of the trustee bank.

The trustee's first intermediate account covering the period from the creation of the trust to February 17, 1931 was judicially settled by the Surrogate's decree of March 3, 1931. The second intermediate account covering the period from February 17, 1931 to September 25, 1937, was judicially settled on November 15, 1937. In neither of these intermediate accounts did it appear that the mortgages purchased were from the bank's own portfolio.

On October 6, 1936, the beneficiaries under the trust entered into an agreement relating to the disposition of income from mortgages purchased from the proceeds of the sale of 400 Walnut Place. The agreement begins by reciting that " *the Trustee named in said agreement* [of April 29, 1929] *in the proper discharge of its duties as such trustee invested a portion of the funds of said trust in certain mortgages upon real estate situated in said City of Syracuse, which funds so invested included the proceeds of the sale of the house, No. 400 Walnut Place in said City.*" (Emphasis supplied.) It then refers to the provisions in said trust agreement which provided, in substance, that decedent's widow, Grace E. Bausch, was to have the use of all income from the proceeds of the sale of the Bausch home and then goes on to state that the widow, relying on the provisions of said trust agreement, gave her consent to the sale of the home. The agreement further recites that certain mortgages purchased with the proceeds from the sale of said house are in default in interest and taxes. Following those recitals, the agreement provides that the income from the Desimone mortgage (one of the mortgages purchased by the trustee from its own portfolio) which had been retained by the trustee to reimburse principal for the amounts paid from principal for taxes upon said property shall be paid over to Grace E. Bausch, together with the interest paid on any mortgages in which funds of the estate may be invested. Certain other limited provisions are to be found as to the payment of taxes out of principal as well as provisions relating to the application of funds in the event of foreclosure, etc.

Upon the death of Grace E. Bausch on March 2, 1944, the trust terminated. In the present proceeding, the bank seeks judicial settlement of its accounts as trustee covering the period from September 25, 1937 to June 20, 1946. It was commenced by the filing of the trustee's account for the period from September 25, 1937 to April 10, 1944.

After service of citations on the objectants and their special appearance to question the jurisdiction of the Surrogate's Court, the trustee in January, 1945, by service of a petition and order to show cause, commenced a proceeding in the Onondaga County Supreme Court for the settlement of its accounts. Upon the return day the trustee moved the court to decline jurisdiction of the proceeding which motion the court, by order dated May 11, 1945, denied, directing instead that the proceeding be heard and determined by the Supreme Court and ordering a reference for that purpose. That order was reversed by this court (270 App. Div. 418) and the proceeding remitted to Surrogate's Court for disposition. Following that decision, the trustee filed in Surrogate's Court its first supplemental account theretofore filed in the Supreme Court proceeding, verified January 31, 1945, for the period April 10, 1944 to January 18, 1945, and its second supplemental account verified June 27, 1946, for the period from January 18, 1945 to June 20, 1946. Thus we have three accounts of this terminated trust covering the period from September 25, 1937 to June 20, 1946, before the Surrogate for judicial settlement in this proceeding.

Objectants filed an answer and objections dated May 9, 1946, and a supplemental answer and objections dated January 5, 1947. The objections were directed against the trustee investing principal funds from the sale of the Bausch home in four specified mortgages shown in the final account. The mortgages to which objections were directed are (a) Butts mortgage for $4,000; (b) Campbell mortgage for $9,000; (c) Pliskin mortgage for $4,500, and (d) Desimone mortgage for $8,000. At the time of the filing of said supplemental answer and objections, objectors moved for an order (1) authorizing an examination of the trustee respecting matters embraced in the objections to the last three above-mentioned mortgages; (no income loss is claimed in respect to the Butts mortgage, the objectants having elected to accept the interest collected by the trustee, in lieu of any claim for income loss from said investment); (2) directing the trustee to admit or deny the correctness of specified objections to certain items of principal and income, debits and credits in the accounts of two of said challenged mortgages (the so-called transposition items), and (3) reopening the prior accountings of 1931 and 1937 in respect to transactions relating to the four self-purchased mortgages.

Upon the hearing of said motion, the court reserved decision upon item 1. Counsel for petitioner-trustee stated that item 2 would be voluntarily complied with. As to item 3, the Surro-

gate denied, without prejudice to renew the motion to reopen the 1931 and 1937 accountings, upon the ground of insufficiency of the moving papers. The Surrogate's denial of the motion to reopen the prior accountings of 1931 and 1937 was affirmed upon appeal by this court (272 App. Div. 958).

By reply dated January 19, 1948, the trustee alleged as affirmative defenses to objectors' surcharge claims: (1) that objectors are barred from questioning any matters or transactions pertaining to the trust estate which occurred during the period covered by the accountings of 1931 and 1937; (2) that the surcharge claims are also barred by the decree of the Surrogate denying objectant's application to reopen the decrees of 1931 and 1937; (3) that the surcharge claims were waived, released and discharged by the agreement of October 6, 1936, and (4) that the mortgages purchased by the trustee from itself were mortgages acquired by the trustee for the purpose of having them available for investment of trust funds.

Following trial of the objections raised by the objectors and trustee's reply, the Surrogate handed down his written decision sustaining the objections to the four mortgages on the ground of established self dealing. We quote from the opinion of the Surrogate: " I am unable, from an examination of the records, exhibits and evidence produced upon the trial, to find that the statutory notice was given by the corporate trustee to the income beneficiaries as required by law, nor do I find that either the life beneficiary or the remaindermen of this trust were fully apprised of their rights under the law applicable thereto. Apparently the first disclosure of self dealing appears in the Final Account for the period September 25, 1937, to April 10, 1944."

Subsequent to the Surrogate's decision of February 21, 1950, an attempt was made, but without success, to have the trustee file its account showing its proceedings subsequent to 1946, and to have such account settled in the pending proceeding. Objectors thereupon applied to the Surrogate's Court on notice for an order directing the trustee to file an account of its proceedings subsequent to June 20, 1946, for judicial settlement as part of this pending proceeding. Concurrently with that motion, objectants commenced a proceeding in Surrogate's Court to determine the compensation and disbursements of objectants' attorneys in connection with the settlement of the accounts and to charge the same against First Trust & Deposit Company individually, and to consolidate said proceeding with the account-

ing proceeding. The trustee moved to dismiss the proceeding against it as trustee individually on the ground that the Surrogate was without authority to impose any charge on the trustee individually.

Following objectors' motion for a further accounting, the trustee made a cross motion for settlement of a decree pursuant to the Surrogate's decision of February 21, 1950. Thereafter and on March 27, 1951, the Surrogate signed the decree submitted by the trustee and by order dated April 16, 1951, denied objectants' motion for a further accounting to be judicially settled in the present proceeding.

Objectants appeal from said decree of March 27, 1951 '' except so much thereof as determines that said accounting trustee committed a breach of trust in purchasing from itself the four mortgages respecting which the respondents have made objection '' and from said decree of April 16, 1951, denying appellants' motion for an order requiring the trustee to file a further account of its proceedings for the period subsequent to June 20, 1946, prior to the entry of any order or decree determining the amount of surcharge and prior to the entry of any decree of judicial settlement herein. The trustee cross appeals from that part of the decree of March 27, 1951, which sets aside the purchase of said four mortgages and surcharges the appellant trustee individually in the sum of $16,138.47 for self-dealing.

In discussing appellants' contentions, we will take up first the claimed improper allocation of cash receipts and disbursements between principal and income, (including the so-called '' transposition items ''), as they affect the Pliskin and Desimone mortgage investments, it being claimed by objectors that the trustee collected $25.71 less cash principal and $25.71 more cash income on account of the Pliskin mortgage than it charges itself with and $413.43 less cash principal and $413.43 more cash income on account of the Desimone mortgage than it charged itself with.

On the assumption that the questioned transposition items would be adjusted between the parties, the Surrogate did not pass on that phase of the motion. Throughout the hearing, it seemed to be the understanding of all concerned that the parties would arrive at some decision as to the correctness of these items and that proof would not be required on that subject. I find nothing in the evidence indicating that counsel for the parties ever reached an agreement on these items. The decree which trustee's counsel prepared and the Surrogate signed, ignores the alleged errors in allocation. We have checked the

transposition items and find that objectants are correct in their contentions. The final account should be adjusted to show an increase in principal surcharge of the Pliskin mortgage of $28.41 and an increase in the principal surcharge of the Desimone mortgage of $416.43. These amounts do not coincide with the figures used by the objectants in their proposed decree, in that the net increases in principal from correction of transposition items in the Pliskin mortgage as shown in said proposed decree as $392.75 should be $390.05 as shown in objectants' supplemental answer and objections and in the Desimone mortgage the net increase in principal from correction of transposition items as shown in objectants' proposed decree as $1,561.95 should be $1,558.95 as shown in objectants' supplemental answer and objections.

The decree of the Surrogate sustaining the objections to the four mortgages in question and surcharging the trustee with the amount of the original investment with interest on the ground of self dealing is, in our opinion, amply sustained by the evidence. The authorities sustain the imposition of surcharge liability upon the basis of breach of trust arising out of self dealing (*Matter of Ryan*, 291 N. Y. 376; *Matter of Young*, 249 App. Div. 495, affd. 274 N. Y. 543; *Matter of Long Island Loan & Trust Co. [Garretson]*, 92 App. Div. 1, affd. 179 N. Y. 520; *Marcellus* v. *First Trust & Deposit Co.*, 264 App. Div. 601, affd. 291 N. Y. 372). The objections to the imposition of such liability asserted by the appellant-trustee in its cross appeal are that the prior accounts of 1931 and 1937 and the agreement of 1936 constitute a bar to the surcharge. These objections were overruled by the Surrogate in an opinion wherein he said: " Apparently the first disclosure of self dealing appears in the Final Account for the period September 25, 1937, to April 10, 1944."

Failure of the trustee to disclose its illegal self dealing in its 1931 and 1937 accountings renders said accountings ineffectual as a bar against recovery of losses sustained. (*Matter of Long Island Loan & Trust Co. [Garretson], supra*, p. 4; *Matter of Schmidt*, 163 Misc. 156, 159; *Matter of Ryan*, 181 Misc. 566, 576–577; *Matter of Ryan*, 291 N. Y. 376, 412, *supra; Matter of Weir*, 182 Misc. 845, 847; *Matter of Lawyers Tit. & Guar. Co.*, 270 App. Div. 294, 301.)

The agreement of 1936 only reaffirms the obligation of the trustee under the agreement of 1929. It makes no mention of any self dealing nor does it purport to ratify anything. The evidence clearly demonstrates the falsity of the statement con-

tained in the agreement that the trustee had properly invested trust moneys in the mortgages. No inference that the beneficiaries intended to ratify the breach of trust of which they were ignorant arises out of a false recital in the agreement to the effect that the investments were proper. The authorities sustain the holding of the Surrogate that under the evidence the trustee failed to establish its alleged defense of estoppel through ratification (*Matter of Long Island Loan & Trust Co. [Garretson], supra,* p. 4; *Matter of Young, supra,* p. 501; *Matter of Hoyt,* 294 N. Y. 373, 380).

This brings us to the question of the determination of the amounts of principal and income for which the trustee should be surcharged. The remaindermen appeal from the principal surcharge of $16,138.47 imposed for the credit of the principal account, it being their contention that the principal surcharge which should be imposed is $20,009.43. The admitted " principal surcharge " item as corrected by the transposition items set forth in objectants' proposed decree amounts to $20,009.43. However, the decree surcharges the trustee for only $16,138.47, being $3,434.82 less than the amount of principal which the trustee admits as being invested in the four mortgages. The decree surcharges the trustee with interest at the rate of $3\frac{1}{4}\%$ to March 2, 1944, the date of the termination of the trust amounting to $12,448.87, but *credits* the trustee with the income *actually received* on the mortgages to March 2, 1944, in the sum of $15,883.69. The excess in income credit over interest surcharges is $3,434.82, the amount deducted by the decree from the principal surcharge liability. Such adjustment, in effect, determines that the life beneficiary received $3,434.82 more income than she was entitled to from the trust and awards that amount to the trustee. Such an adjustment is contrary to the holding in *Matter of Rosenbaum* (73 N. Y. S. 2d 862 [Surrogate's Ct., N. Y. Co., DELEHANTY, S.]), sustaining the unconditional right of a beneficiary to receive and retain the actual income from an illegal investment: " The remaining mortgage transaction raises only a question of adjustment of income. The trustee has made good the principal sum. The questions now are whether or not the income account should be adjusted at the legal rate of interest or at the average earning rate of trust assets generally and whether after such adjustment the trustee is entitled to a credit in income account of the surplus, if any, of the amount paid over to the income beneficiaries in excess of the rate fixed by the court. The court will not impose the penalty of legal interest. *It will give no credit for any*

*overplus of interest paid — holding the trustee to have no right after paying interest on an unauthorized investment to penalize the beneficiaries by recouping part of the interest paid.* Matter of Ryan's Estate, 181 Misc. 566, 586, 48 N. Y. S. 2d 522, 540, affirmed 264 App. Div. 704, 34 N. Y. S. 2d 49, affirmed 291 N. Y. 376, 52 N. E. 2d 909. *It holds that the fund paid into the trust is to be credited with the average earning rate of estate assets for the period computed since the interest was last paid and until re-investment.* It is argued that the case of *Albright* v. *Jefferson County National Bank,* 292 N. Y. 31, 53 N. E. 2d 753, 151 A. L. R. 897, has made a different rule but this court does not find that any different rule than that expressed in the Ryan case, supra, has been made. Obviously a different rule might operate greatly to the advantage of a trustee and greatly to the disadvantage of beneficiaries who before ascertainment of the invalidity of an investment had received interest at a rate greater than the average earning rate of trust investments. Income benficiaries are entitled to rely upon the presumption that the trustee has dealt properly with the trust and that the income paid to them was earned and payable. *When a person interested in principal successfully challenges an underlying investment the income beneficiary (frequently the chief object of the testator's bounty) should not be compelled to pay part of the surcharge. That is what the application of any rule other than that expressly affirmed by the Court of Appeals in the Ryan case would accomplish.* Until the Court of Appeals overrules the Ryan case this court will follow it.'' (Emphasis supplied.) (See same case, mod. 277 App. Div. 199, mod. 303 N. Y. 715.)

We reject the appellant-trustee's contention that the rule laid down in the *Albright* case *(supra)* is different than that expressed in the *Ryan* case *(supra).* The *Albright* case was one in equity for an accounting by a trustee in which the interests of the objectors were the same. As we read the decision in that case, it does not require repayment of any income actually paid to the income beneficiary in excess of the amount fixed by the Surrogate as the average rate of return for trust funds but only holds that where the income does not equal the rate of return so fixed, the trustee must be credited, in computing income surcharge, with the amount actually distributed to said income beneficiaries. In the instant proceeding, the representatives of the life beneficiary are seeking an income surcharge as distinguished from the relief sought by the remaindermen, i.e., a principal surcharge, together with an income surcharge following termination of the trust and throughout the period of distribution.

By the decree the remaindermen are required to absorb any overpayment of income to the life beneficiary through a deduction from the principal surcharge which is admittedly owing to them. The authorities do not justify such a burden.

We will consider next the "income surcharge", if any, that should be imposed. The executors of the deceased's life beneficiary appeal because no "income surcharge" is imposed for the benefit of the estate of the life beneficiary for income losses claimed on account of the illegal investments during the fourteen years they were held prior to her death. The remaindermen also appeal because there is no "income surcharge" imposed for their benefit for the period subsequent to the termination of the trust on March 2, 1944, and because the trustee individually is awarded all income which it has collected on the illegal investments since that date.

Without attempting to review the various items making up the three accounts covering the period from September 25, 1937 to June 20, 1946, we hold that the surcharges on income and on principal should be computed separately and without regard one for the other. This the decree fails to do. What the decree actually does is to compute a single surcharge attributable to principal but calculated so as to reduce the surcharge by the amount of income actually received in excess of $3\frac{1}{4}\%$ fixed by the Surrogate as average rate of earnings on trust funds. Such commingling of principal and income for purposes of computing a principal surcharge is improper. After making adjustments in the account for the improper allocation of cash receipts and disbursements between principal and income as pointed out above, the Surrogate should direct a "principal surcharge" to cover the loss of principal sustained on the four mortgages without regard to any income received by the trustee. The decree should also direct that an "income surcharge" be made on all mortgages other than the Butts mortgage for the benefit of the estate of the life beneficiary covering the period up to the time of the death of the life beneficiary.

Such "income surcharge" shall be computed separately with respect to each individual mortgage purchased by the trustee from its individual portfolio. The "income surcharge" on each of such mortgages shall be computed by deducting the income actually received from date of purchase of said mortgage by the trustee to date of death of the life beneficiary from the income that would have been received on the original mortgage investment during that period at a rate of $3\frac{1}{4}\%$ per annum. In the event the income actually received on any such

mortgage exceeds the rate of return of 3¼% per annum on the original investment, the excess income on such mortgage shall not be used to reduce the " income surcharge " on any other such mortgage.

The decree of April 16, 1951, denying appellants' motion for an order requiring the trustee to file a further account of its proceedings for the period subsequent to June 20, 1946, prior to the entry of any order or decree determining the amount of surcharge and prior to the entry of any decree of judicial settlement herein, should be reversed and the motion granted.

Upon the trustee filing a supplemental account bringing the same down to date, the Surrogate is directed to assess an additional " income surcharge " for the period from March 2, 1944. Such surcharge shall be computed by taking the difference, if any, between the actual income received and the amount that should have been received upon the principal computed at a rate to be fixed by the Surrogate as representing an average rate of earnings on trust funds, from March 2, 1944, having due regard to the nature of investments available to a trustee during the period of winding up the trust and the inflated rate of earnings which obtained during that period, to date of final account (*Matter of Hopson*, 213 App. Div. 395).

Under the decree in the present case, the longer distribution is delayed, the more the " principal surcharge " will be reduced by the income received during that period. It is conceivable that delay in distribution, coupled with inflated income, would substantially reduce the principal surcharge to the distinct advantage of the trustee.

Under the facts as disclosed by the record, we hold that the trustee is not entitled to any commissions on principal or income arising out of the illegal investment made in the mortgages in question. Neither do we think that the trustee or its attorneys should be compensated from the trust estate for legal services and disbursements incurred in resisting the objections. On the other hand, it is our feeling that all legal expenses and disbursements reasonably incurred by objectants in their successful efforts to obtain redress, should be surcharged against the trustee individually rather than the trust fund (*Matter of Rosenbaum*, N. Y. L. J. Feb. 5, 1948, p. 468, col. 5). Distribution of the trust estate has already been held up for something over eight years following the termination of the trust.

The decree insofar as it determines that said accounting trustee committed a breach of trust in purchasing from itself the four mortgages to which appellants have made objection

should be affirmed; and otherwise the decree should be reversed, on the law and facts, in all respects, and the matter should be remitted to the Surrogate's Court for further proceedings in accordance with this opinion, with costs to the objectants-appellants. The order of April 16, 1951, should be reversed on the law and facts, without costs and the motion granted, without costs.

All concur. Present — TAYLOR, P. J., VAUGHAN, KIMBALL, PIPER and WHEELER, JJ.

Decree insofar as it determines that the accounting trustee committed a breach of trust in purchasing from itself the four mortgages to which appellants have made objection affirmed; and otherwise decree reversed on the law and facts, in all respects, and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion with costs to the objectants-appellants. Order of April 16, 1951, reversed on the law and facts without costs and motion granted, without costs.